IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DUANE L. MEESTER, | ) | 8:12CV86 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| WILLIAM L. BOWERS, and | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendants' Motion for Summary Judgment. (Filing No. 25.) Defendants are the Department of Justice ("DOJ") and William L. Bowers, the Director of Industry Operation, Kansas City Division of the Bureau of Alcohol, Tobacco, and Firearms ("Bowers"). For the reasons set forth below, Defendants' Motion will be granted.

## I. BACKGROUND

Plaintiff Duane Meester ("Meester") filed his Complaint in this matter on February 29, 2012. (Filing No. 1.) He alleged that the DOJ wrongfully denied his application to renew his federal firearms license. (*Id.*) The DOJ moved to dismiss Meester's Complaint on May 9, 2012, after which Meester moved to amend the Complaint. (Filing Nos. 6 and 8.) The court granted Meester's Motion to Amend, in part, and denied the DOJ's Motion to Dismiss as moot. (*See* Filing No. 13.) Pursuant to the court's order allowing Meester to amend his complaint, Bowers was added to the case as a defendant. (*Id.*) In response to Meester's Amended Complaint, Defendants filed an Answer (Filing No. 17) and a copy of the administrative record (Filing No. 19).

On December 13, 2012, Defendants filed the instant Motion for Summary Judgment. (Filing No. 25.) Defendants' Motion is accompanied by a Brief that contains a statement of material facts organized in short numbered paragraphs with pinpoint citations to the relevant pages of the administrative record. (*See* Filing No. 26 at CM/ECF pp. 3-12). *See also* NECivR 7.1(a)(1)(A), 56.1(a). Meester filed a Brief in opposition to Defendants' Motion, but the Brief does not contain a response to Defendants' statement of facts. (*See* Filing No. 27.) *See also* NECivR 56.1(b)(1). Instead, Meester's Brief includes three short unnumbered paragraphs, each of which recites facts that (according to Meester) warrant denial of Defendants' Motion. (*See* Filing No. 27.) Two of these paragraphs are accompanied by citations, though it is not readily apparent whether the citations refer to documents included in the administrative record. (*See id.*) Meester submitted no affidavits, documents, or other materials for the court's consideration. Because Meester has failed to controvert the facts set forth in Defendants' Brief, the court deems those facts admitted. *See* NECivR. 56.1(b)(1).

## II.  UNDISPUTED MATERIAL FACTS

1.     Meester, doing business as Frontier Fire, held a federal firearms license as a dealer of firearms other than destructive devices from 1980 to 2008 (license number 5-47-089-01-08729). Frontier Fire was located at 3834 Deerfield Lane in Omaha, Nebraska. (Filing No. 19 at CM/ECF p. 104.)

2.     On November 13, 1998, the Bureau of Alcohol, Tobacco and Firearms ("ATF")[1] conducted a compliance inspection of the Deerfield Lane address. (*Id.* at CM/ECF pp. 104, 128.) The ATF cited Meester for failure to accurately complete the

---

[1]The administrative record reflects that at some unspecified time, the Bureau of Alcohol, Tobacco and Firearms became the Bureau of Alcohol, Tobacco, Firearms and Explosives. In the interest of consistency, the court will refer to this agency as "the ATF" throughout this Memorandum and Order.

ATF Form 4473, Firearms Transaction Record ("Form 4473"), on eight occasions. (*Id.* at CM/ECF pp. 104, 128.) Meester signed the inspector's report. (*Id.*)

3. Also on November 13, 1998, Meester signed an acknowledgment stating that various Gun Control Act laws were reviewed with him during the compliance inspection, including rules and regulations about "Premises Covered," "Reporting Changes of[] Address," "National Firearms Act Type Weapons," and "zoning restrictions." (*Id.* at CM/ECF p. 129.) Directly above Meester's signature, the acknowledgment form reads, "On this day, 11/13/98, I agree the above information was thoroughly explained to me by an ATF Inspector and any questions regarding the above information were answered." (*Id.*)

4. In 1999, Meester applied for and was issued a federal firearms license as a manufacturer of firearms other than destructive devices (license number 47-01-34746) with a business address of 237 West 5th Street in Fremont, Nebraska. (*Id.* at CM/ECF p. 136.)

5. In connection with Meester's application for this license, the ATF inspected the West 5th address in Fremont on May 6, 1999. (*Id.*) On this date, Meester again signed an acknowledgment stating that an ATF inspector had reviewed various rules and regulations with him. (*Id.* at CM/ECF p. 137.) This acknowledgment was the same as the one he signed after the inspection of the Deerfield Lane premises.

6. On July 21, 2010, Meester signed and submitted an Application for an Amended Federal Firearms License. (*Id.* at CM/ECF pp. 138-139.) This application sought to changes the business address for his manufacturer license from 237 West 5th Street in Fremont, Nebraska, to 4841 South 137th Street in Omaha, Nebraska. (*Id.*) The application included a certification that Meester's business would be operated out of a storefront located at the 137th Street address, and it was accompanied by a copy

3

of Meester's rental agreement with the storefront's owner, Philip Hansen ("Hansen").[2] (*Id.* at CM/ECF pp. 139-140.) The application listed Meester's home address as 15024 Karen Circle in Omaha, Nebraska. (*Id.* at CM/ECF p. 138.)

7. The ATF amended the manufacturer license to the new address on South 137th Street in Omaha. (*Id.* at CM/ECF p. 141.)

8. Meester applied for a renewal of his federal firearms license. Thereafter, in September and October 2010, ATF Inspectors Greg Kubert and Jill Hansen inspected the South 137th Street address. (*Id.* at CM/ECF p. 125.) Based on the results of this inspection, the ATF issued a "Notice of Denial of Application for License," which was signed by Defendant William Bowers on May 11, 2011. (*Id.* at CM/ECF p. 115.) The notice listed seven categories of violations or grounds for denial, with subparagraphs detailing the violations with references to the applicable statutes and regulations under the Gun Control Act. (*Id.* at CM/ECF pp. 116-118.) Specifically, the notice stated that Meester's application for renewal of his license was denied because Meester:

(a) "willfully conducted his Federal firearms business from an unlicensed business located at 15024 Karen Circle, Omaha, Nebraska," in violation of 18 U.S.C. § 923(j) and 27 C.F.R. § 478.50 (*Id.* at CM/ECF p. 116);

(b) knowingly made false statements or misrepresentations to investigators and to other licensees in violation of 18 U.S.C. § 924(a)(1)(A) and 27 C.F.R. § 478.128(c) (*Id.*);

---

[2]Hansen is also referred to as "Phil Hanson" in the administrative record. (*See e.g.*, Filing No. 19 at CM/ECF p. 64.)

(c) listed addresses as licensed premises despite knowing he was not conducting business from these locations in violation of 18 U.S.C. § 924(a)(1)(A) and 27 C.F.R. § 478.128(a) (*Id.*);

(d) on approximately four occasions, "transferred a machine gun which was not lawfully transferred or possessed before May 19, 1986," in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.36 (*Id.* at CM/ECF p. 117);

(e) failed to keep records pertaining to firearms transactions on the licensed premises in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.121(a) (*Id.*);

(f) failed to record the acquisition of firearms within the required time period and failed to record the importer of firearms in the "Acquisition & Disposition Bound Book" ("A&D Book") in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.125(e) (*Id.*); and

(g) did not have a qualified business premises in violation of 18 U.S.C. § 923(d)(1)(E) and 27 C.F.R. § 478.47(b)(5), as he did not have a key to the licensed premises, did "not pay rent to the owner of the building in which the licensed premise[s] [were] located," and did not keep his firearms inventory, his A&D Book, or ATF Forms 4473 at the licensed premises (*Id.* at CM/ECF p. 118).

9.      On May 22, 2011, Meester requested a hearing to review the notice of denial. (*Id.* at CM/ECF p. 120.)

10.      On September 8, 2011, an administrative hearing was held in front of ATF Officer Mark Banas. Meester and his wife appeared as witnesses on Meester's

behalf, and ATF Investigators Greg Kubert and Jill Hansen appeared as witnesses for the ATF. (*Id.* at CM/ECF pp. 10-11.)

11. The tape recording of the hearing, and the subsequently prepared transcript of the hearing is incomplete due to a "tape mixup" on the part of Mark Banas. (*See id.* at CM/ECF p. 94.) Only portions of the hearing that were transcribed are summarized in the following paragraphs.

12. Investigator Kubert testified that during his inspection on September 21, 2010, Meester stated he kept his A&D Book at his residence rather than at his business address. (*Id.* at CM/ECF p. 35.) Meester also told Investigator Kubert that during the time when his business was located on West 5th Street in Fremont, Nebraska, he did not keep his records at that location either. (*Id.*) In addition, Meester stated that after a break-in occurred at the West 5th Street business address, he moved his firearms inventory to his home residence. (*Id.* at CM/ECF pp. 36-37.)

13. Investigator Kubert testified that during his inspection, he compared the firearms in Meester's inventory to the A&D Book, and he discovered an H&R Handy gun in Meester's living room that lacked a corresponding entry in the A&D Book. (*Id.* at CM/ECF p. 53.) In response, Meester testified that this firearm was not in the A&D Book because it had been in his 2001 book under a different license that he no longer held, and he had since transferred the firearm to his personal collection. (*Id*. at CM/ECF p. 58.) Investigator Kubert replied that all of Meester's firearms should have been listed in the A&D Book because Meester failed to distinguish the firearms in his personal collection from those that were part of his business inventory. (*Id*. at CM/ECF p. 59.) Meester then explained that he had been moving guns around in his residence at the time of the inspection because there was water in his basement, but he was still able to determine whether a given firearm was in his personal collection

or his business inventory. (*Id.* at CM/ECF p. 60.) He admitted, however, that every gun he owns is for sale. (*Id.*)

14. Investigator Kubert testified that Meester also failed to enter the name of the importer of two particular firearms into the A&D Book, despite being aware of the requirement to do so. (*Id.* at CM/ECF p. 54.) Meester testified that he assumed he could choose the information that he would enter from certain firearm forms into his A&D Book. (*Id.* at CM/ECF p. 55.)

15. Investigator Kubert testified that when he first began his inspection in September 2010, he became concerned when he learned that Meester did not have a key to the South 137th Street premises. (*Id.* at CM/ECF pp. 63-64.) According to Investigator Kubert, Meester said that he was reluctant to accept a key from Hansen because he did not "know him well enough." (*Id.* at CM/ECF p. 64.) Meester also told Investigator Kubert that he had an informal agreement with Hansen to use Hansen's South 137th Street location "as his business premises on his application." (*Id.* at CM/ECF p. 65.) Investigator Kubert concluded that Meester was running his firearms business from his home on Karen Circle despite knowing that Omaha's zoning regulations did not permit him to do so. (*Id.* at CM/ECF pp. 65-66.) In response, Meester testified that by Thanksgiving 2010, he had met with Hansen a few more times and was able to obtain a garage door opener for the premises. (*Id.* at CM/ECF pp. 66-67.) He also testified that he did not conduct business before he was able to move into Hansen's property. (*Id.* at CM/ECF pp. 67-68.)

16. Investigator Kubert testified that the zoning regulations for the City of Omaha would not allow a firearms business to be run from Meester's residence, and that Meester had acknowledged to him that he could not get a license at his residence due to city zoning ordinances. (*Id.* at CM/ECF pp. 65-66.)

17. Investigator Kubert testified that it appeared to him that Meester was conducting his firearms business from his residence. (*Id.* at CM/ECF p. 65.)

18. Following the hearing, ATF Officer Mark Banas concluded the ATF had substantiated all but one of the violations set forth in the notice denying renewal of the license. (*Id.* at CM/ECF pp. 95-101.)

19. On January 3, 2012, Defendant Bowers reviewed the record and issued a Final Notice of Denial stating that Meester had willfully committed all seven violations set forth in the notice denying renewal of the licence. (*Id.* at CM/ECF pp. 102-111.)

### III. ANALYSIS

A.  **Summary Judgment Standard**

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Schilf v. Eli Lilly & Co*, 687 F.3d 947, 949 (8th Cir. 2012). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652-653 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate allegations with "'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence

8

is insufficient to avoid summary judgment." *Id.* Essentially, the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

**B.    Discussion**

An application for a license to engage in the business of importing, manufacturing, or dealing in firearms "shall be approved" if "the applicant has not willfully violated any of the provisions of [Chapter 44 of Title 18] or regulations issued thereunder." 18 U.S.C. § 923(d)(1)(C). If such an application is denied or if a previously-issued license is revoked, the aggrieved party may request a hearing to review the denial or revocation. *See* 18 U.S.C. § 923(f)(2). If the hearing results in a decision unfavorable to the aggrieved party (as occurred here), he may "file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation." 18 U.S.C. § 923(f)(3). Thus, the court's authority to review the denial of Meester's application to renew his license stems from section 923(f)(3).

In an action brought under section 923(f)(3), the district court "may consider any evidence submitted by the parties to the proceeding," even if such evidence was not considered at the previous hearing. Put differently, the court's de novo review is not limited to the administrative record. *See Fin & Feather Sport Shop, Inc. v. United States Treasury Dep't, Internal Revenue Serv., Bureau of Alcohol, Tobacco & Firearms*, 481 F. Supp 800, 803-04 (D. Neb. 1979). Courts have granted judgment summarily, however, when the material facts developed at the administrative hearing (1) are not called into question by the party petitioning for review, and (2) justify non-renewal of the license. *See Cucchiara v. Sec'y of Treasury*, 652 F.2d 28, 30 n.1 (9th Cir. 1981) (quoting *Stein's Inc v. Blumenthal*, 649 F.2d 463, 468 n.7 (7th Cir. 1980)). *See also On Target Sporting Goods, Inc. v. Attorney General of the United States,*

9

472 F.3d 572, 574-75 (8th Cir. 2007) (affirming district court's grant of summary judgment on judicial review of denial of firearm license).

In this case, Meester has not disputed the facts cited by Defendants, and with the exception of the three short paragraphs of facts alleged in his response brief (which lack citations to the administrative record), he has not suggested that materials apart from the administrative record ought to be considered. As noted previously, Meester has not submitted any additional evidence for the court's consideration. Because Meester has not called into question the facts set forth in the administrative record, this case is ripe for summary disposition if the undisputed facts show that Meester's application to renew his license should be denied. They do.

As noted above, an application for a firearms license can be denied if the applicant has "willfully violated" any of the provisions of Chapter 44 of Title 18, or the regulations issued thereunder. 18 U.S.C. § 923(d)(1)(C). "For the government to prove a willful violation of the federal firearms statutes, it need only establish that a licensee knew of its legal obligation and 'purposefully disregarded or was plainly indifferent to the . . . requirements.'" *On Target Sporting Goods*, 472 F.3d at 575 (quoting *Lewin v. Blumenthal*, 590 F.2d 268, 269 (8th Cir. 1979)). "The government is not required to show that the violations occurred with any bad purpose." *Id.* (citing *Lewin*, 590 F.2d at 269).

The record shows that Meester knew that he was unable to obtain a firearms license for his Karen Circle residence, yet he maintained his firearms inventory and records at the residence. He also admitted that all of the firearms located at his residence were for sale, including those that he considered to be in his personal collection. Although South 137th Street is listed on Meester's license as his business location, Meester not only failed to keep his inventory there, but lacked his own means of accessing the premises during the time of the inspection. Based on these uncontroverted facts, the court finds that by amending his license to list his business

address as South 137th Street in Omaha, Nebraska, Meester violated 18 U.S.C. § 924(a)(1)(A) and 27 C.F.R. § 478.128(a), which state that it is unlawful for a person to make a false statement or representation in applying for a license. The court also finds that by failing to maintain his business at the South 137th Street storefront, Meester violated 18 U.S.C. § 923(d)(1)(E) and 27 C.F.R. § 478.47(b)(5), which require an applicant to have "premises from which he conducts business subject to license . . . or from which he intends to conduct business within a reasonable period of time."

In addition, the record shows that Meester failed to keep his firearms records at his licensed business premises (both before and after he changed his business address to South 137th Street), and he failed to maintain proper records for at least three firearms in his inventory. Thus, he violated 18 U.S.C. § 923(g)(1)(A), 27 C.F.R. § 478.121(a), and 27 C.F.R. § 478.125(e), which together require licensees to maintain their records at their place of business and specify the information that must be recorded when a firearm is acquired.

The court also finds that the foregoing violations were willful. It is undisputed that Meester was aware of his legal obligations under the firearms statutes and regulations. He held a firearms license since 1980, he signed acknowledgments on two occasions certifying that the relevant laws had been explained to him, and he confirmed his certification during the hearing. He also admitted knowing that Omaha's zoning rules would not permit him to operate his business from his Karen Circle residence. Given the uncontroverted evidence demonstrating Meester's awareness of the legal requirements and his repeated failure to follow them, the court concludes that Meester was plainly indifferent to the requirements of the law. *See On Target Sporting Goods*, 472 F.3d at 575 (citing *Lewin*, 590 F.2d at 269). Meester's application was properly denied.

In his response brief, Meester states that "Frontier Fire was closed from on or about 7/1/2010 until about 9/15/2010 until a new FFL change of address could be obtained and the SOT corrected. The change of address and new SOT was issued on 8/31/2012 [sic]. The corrected FFL was received and the SOT was applied for and issued by on or about 9/15/2010." (Filing No. 27 at CM/ECF p. 1 (citation omitted).) Assuming for the sake of argument that these statements are true, they are not helpful to Meester's position. Meester's application to amend the manufacturer's license states that his lease for the South 137th Street premises began on August 25, 2010, and the investigators did not begin their inspection until September 21, 2010—approximately one week after Meester claims that Frontier Fire resumed business. (*See* Filing No. 19 at CM/ECF pp. 125, 138, 140.) During the inspection, it was apparent that Meester could not access the business premises, and none of his inventory or records were located at the premises. Thus, if Frontier Fire did in fact commence business on September 15, 2010, there can be no doubt that a violation occurred. See 18 U.S.C. § 923(d)(1)(E), (g)(1)(A); 27 C.F.R. § 478.47(b)(5); 27 C.F.R. § 478.121(a).

Next, Meester states, "[t]he inventory for Frontier Fire was not at the premise [sic] but was located on Karen Circle." (Filing No. 27 at CM/ECF p. 1 (citation omitted).) This statement is accompanied by a citation to 27 C.F.R. § 478.50(a), which states, "[n]o license is required to cover a separate warehouse used by the licensee solely for storage of firearms or ammunition if the records required by this part are maintained at the licensed premises served by such warehouse." The court takes Meester's argument to be that his residence served as a "warehouse," and therefore he violated no law by storing his inventory there. There is no evidence that Meester's home was used "solely for storage of firearms or ammunition," however, and the record establishes that Meester did not maintain the required records at the licensed premises. Under the circumstances, Meester's home cannot be considered a "warehouse" under section 478.50(a).

Finally, Meester states, "[t]he A&D Bound Book was at the new business location for inspection on 9/21/2010, and permission was received to move the A&D Bound Book to the inventory location site in Karen Circle for completion of compliance inspection." (Filing No. 27 at CM/ECF p. 1.) These unsworn statements are in tension with the administrative record. Investigator Kubert testified that when he contacted Meester on September 21, 2010, Meester informed him that his A&D Book was not located on the business premises, and it would have to be retrieved from his residence. (Filing No. 19 at CM/ECF p. 35.) The fact that the book was brought to the business premises later on September 21, 2010, does not undo Meester's admission that the book was not being maintained on the business premises at the time of the inspection. Furthermore, it is immaterial that Meester was allowed to move the A&D Book back to his residence while the inspection continued. The court is persuaded that Meester willfully violated the applicable statutes and regulations.

IT IS THEREFORE ORDERED that:

1. Defendants' Motion for Summary Judgment (Filing No. 25) is granted. Meester's claims against Defendants are dismissed with prejudice.

2. Meester's Objection to Defendants' Motion (Filing No. 27) is overruled.

3. A separate judgment will be entered in accordance with this Memorandum and Order.

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

DATED this 25th day of July, 2013.

BY THE COURT:

*s/ John M. Gerrard*
United States District Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.